# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

IN RE:

JAMES FREDERICK POMEROY, II,

        DEBTOR.

CHAPTER 7
CASE NO. 05-23127-WCH

INTERNATIONAL STRATEGIES GROUP, LTD.,

        PLAINTIFF,

v.

JAMES FREDERICK POMEROY, II,

        DEFENDANT.

ADVERSARY PROCEEDING
NO. 06-01064

## MEMORANDUM OF DECISION

### I. <u>Introduction</u>

The matter before the Court is the motion of International Strategies Group, Ltd. ("ISG") for summary judgment filed in the above-captioned adversary proceeding in which ISG objects to the discharge of an alleged debt owed by James Frederick Pomeroy, II ("Pomeroy") under 11 U.S.C. § 523(a)(2)(A). ISG contends that it is entitled to judgment because Pomeroy's fraud cannot be relitigated under issue or claim preclusion as it was established by a default judgment entered as a discovery sanction in a federal district court proceeding concerning the same debt. Pomeroy opposes the motion for summary judgment alleging that because the previous judgment

1

was entered by default, the issue of fraud was not actually litigated. For the reasons stated below,

I will enter an order granting the motion for summary judgment.

## II. Background

The facts are drawn from the pleadings of the parties and are not in dispute except where

noted herein. Before 1998, Pomeroy formed and managed several corporations, one of which

was known as the Corporation of the BankHouse, Inc. ("COB"). Pomeroy was the founder and

chief executive officer of COB. Although it is not clear from the record, the parties apparently

agree that COB engaged in structuring certain types of merchant banking transactions for its

clients, and used its clients' funds for investment in various ventures. In or around 1998, ISG

voluntarily gave COB the amount of $4,000,000.00 for investment.

In March 2002, after unsuccessful demands for the return of the funds, ISG initiated a

diversity lawsuit against Pomeroy, COB and SB Global[1] in the United States District Court for

the District of Massachusetts (the District Court Matter"). In its complaint, ISG alleged fraud,

intentional misrepresentation, breach of contract, conversion, breach of fiduciary duty and

violation of Mass. Gen. Laws ch. 93A.[2]

Pomeroy initially, by his counsel, filed an answer and asserted numerous affirmative

defenses in the District Court Matter. Pomeroy apparently responded to some of the requests for

production of documents. Pomeroy's counsel participated in conversations with counsel for ISG

---

[1]ISG's complaint alleges that SB Global was a "Pomeroy-controlled corporation," an allegation that Pomeroy denies. *See* Plaintiff's Complaint Objecting to Discharge, ¶ 15 (the "Complaint").

[2]The parties do not dispute the facts regarding the District Court Matter. ISG provided a copy of the docket and many of the pleadings. I may take judicial notice of any further pleadings contained in that docket. *In re Marrama,* 345 B.R. 458, 463 n.9 (Bankr. D. Mass. 2006).

regarding this discovery.

ISG sought a preliminary injunction which Pomeroy opposed. The parties then stipulated to an order regarding the injunction and the court accepted the stipulation and entered the order in July 2002.[3] The order froze certain bank accounts and assets. The order also provided that the defendants, including Pomeroy, would conduct an accounting within five days of the date of the order. The order lastly permitted Pomeroy to withdraw from his bank accounts an amount of money for living expenses. In April 2003, ISG moved for an accounting as a result of the failure of the defendants to comply with that portion of the preliminary injunction. Pomeroy's counsel attended the court conference regarding the motion. In May 2003, Judge Zobel granted the motion for an accounting.[4]

Thereafter, Pomeroy failed to respond to two detailed sets of requests for admissions,[5] which totaled 553 requests, despite the fact that each set purported to establish ISG's version of the facts as well as the factual foundation for an adverse finding under Mass. Gen. Laws ch. 93A and request for treble damages. In September 2003, ISG filed a motion for sanctions under Fed. R. Civ. P. 37 against the defendants including Pomeroy. In the motion, ISG alleged that the defendants had failed to comply with the terms of the stipulation, order on the preliminary

---

[3]The stipulation referred to and adopted a portion of the preliminary injunction which had entered in another Pomeroy matter before Judge Zobel. *See supra* note 6. The stipulation specified that a termination of that proceeding would not have the effect of terminating the preliminary injunction in the District Court Matter absent an order of the court or the consent of the parties.

[4]The docket in the District Court Matter does not provide a copy of the motion for an accounting or a copy of the order. According to ISG in its motion for sanctions, as a result of the motion and order, the defendants were once again ordered to provide an accounting under oath.

[5]ISG served the first set in September 2003 and the second set in March 2004.

3

injunction and order granting the motion for an accounting. Specifically, the motion alleged that the defendants had failed to provide an accounting, monthly reports and the disclosure of assets. ISG also argued the defendants had failed to comply with discovery. ISG sought an order of contempt, attorneys' fees, an order transferring the defendants' interest in certain bank accounts and an order requiring the defendants to comply with discovery.

Judge Zobel held a show cause hearing on October 30, 2003 at which time she considered the motion for sanctions. Pomeroy's counsel attended that hearing. In January 2004, Judge Zobel entered two orders regarding the motion for sanctions. In one order, Judge Zobel found the defendants to be in contempt of court and assigned certain assets to ISG and ordered other assets to be held in escrow. In another order she allowed the motion for sanctions.

After the show cause hearing, ISG moved for a default and a real estate attachment on Pomeroy's real estate. Pomeroy was defaulted in January 2004. In early 2004, ISG served its second set of requests for admissions, request for treble damages under Mass. Gen. Laws ch. 93A and motion for entry of judgment. The Debtor did not oppose these pleadings.

Judge Zobel held a hearing on the motion for entry of judgment and ordered ISG to file a revised judgment and supporting papers. She consequently entered findings of fact concerning Mass. Gen. Laws ch. 93A, describing, *inter alia*, Pomeroy's knowing and willful misrepresentation, solicitation and conversion of ISG's funds. In June 2004, Judge Zobel entered a final amended judgment finding Pomeroy and the other defendants liable to ISG in the amount of $10,468,106 on the basis of fraud, intentional misrepresentation, breach of contract, conversion, breach of fiduciary duty, federal and state securities violations and violation of Mass. Gen. Laws ch. 93A. The docket reflects, and Pomeroy does not dispute, that Pomeroy received

4

notice of all of the foregoing motions and hearings.

Pomeroy filed his chapter 7 bankruptcy case on October 14, 2005. ISG timely filed the

Complaint. ISG then filed its motion and memorandum for summary judgment, together with its

exhibits and statement of undisputed facts. Pomeroy filed his response and memorandum in

opposition to the motion for summary judgment. Pomeroy also responded to ISG's statement of

undisputed facts. I also allowed the parties to file supplemental statements and memoranda.

In its motion, ISG alleges that as a result of the findings and judgment entered in the

District Court Matter, it is entitled to summary judgment. Specifically, ISG argues that because

Pomeroy had a full and fair opportunity to defend against the litigation in the district court, the

findings of the district court are entitled to issue preclusive effect in this adversary proceeding.

ISG cites cases which warn of circumstances in which a litigant so utilizes the court system that a

court must conclude that the matter has been actually litigated such that a default judgment

would be entitled to preclusive effect. *See Treglia v. MacDonald*, 430 Mass. 237, 242, 717

N.E.2d 249 (1999) (citing *Gober v. Terra + Corp. et al. (In re Gober)*, 100 F.3d 1195 (5th Cir.

1996); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995)).

Alternatively, ISG argues that the doctrine of claim preclusion also would render the judgment in

the District Court Matter binding in this adversary proceeding.

In response to ISG's motion for summary judgment, Pomeroy points to the general

principle that a default judgment does not have preclusive effect on an issue in a subsequent

action because the issues have not been actually litigated. *Treglia*, 430 Mass. at 241; 717 N.E.2d

249 (citing  Restatement (Second) of Judgments § 27 comment e, at 257 (1982)). To explain

why he failed to continue in defense of the District Court Matter, Pomeroy alleges that due to his

5

numerous legal problems, he ran out of funds during the District Court Matter.[6]  Pomeroy also

argues that the admissions deemed admitted against him in the District Court Matter were

binding for that proceeding only under Fed. R. Civ. P. 36.  As a result, Pomeroy argues that the

default judgment cannot entitle ISG to summary judgment because a critical element of issue

preclusion, namely actual litigation, is not met.

In support of his defense, Pomeroy submitted a single affidavit by his former counsel.  In

it his counsel states that Pomeroy ran out of funds to defend the various issues with which he was

confronted.  He further states that Pomeroy instructed him in the summer 2002 only to respond to

what was required of him by the district court.  His counsel further states that by June 2003,

Pomeroy stopped defending the action.

I held a hearing on the motion for summary judgment.  I then took the matter of the

preclusive effect of the default judgment, either under issue or claim preclusion, under

advisement.

Thereafter, the parties sought and received authority to submit supplemental briefs.  ISG

submitted information regarding the payments which Pomeroy made to his former law firm

during the course of the District Court Matter, which between 2001 and 2004 totaled $133,000.

The payments between late summer 2002 and March 2004 totaled $58,000.

---

[6]Pomeroy's pleadings and affidavits by his former attorney reflect that during the District
Court Matter, Pomeroy was a defendant in another district court lawsuit before Judge Zobel.
This lawsuit was commenced in November 2001 and voluntarily dismissed in October 2002 with
mutual releases.  Pomeroy asserts that during this litigation and the District Court Matter, he had
other legal problems including being the subject of criminal investigations by the United States
Department of Justice.  A criminal charge was filed against him in Florida in April 2004.
Pomeroy plead guilty in May 2004 and was sentenced in July 2004.  Pomeroy was not fined in
that case.

Pomeroy responded to the supplemental brief with another affidavit of his former

counsel.  In it he states that Pomeroy sought to marshal his assets "in a way designed to defend

himself where he could afford to do so."[7]  He explains that he required Pomeroy to pay for the

Florida defense by way of an "up-front retainer."  He believes that Pomeroy is still indebted to

his former firm.  Pomeroy's attorney further states that he believes that the payments made to his

firm in 2002 were loans from family and friends.  The payments which he itemized in his

affidavit total $55,000.  All but $15,000 were submitted prior to the period during which ISG

demonstrated the firm received $58,000.

## III. Analysis

### 1. Summary Judgment Standard

Summary judgment should only be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)).  All reasonable

inferences from the facts must be drawn in the manner most favorable to the nonmovant.

*Desmond v. Varasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994).  Once the movant has

averred "an absence of evidence to support the nonmoving party's case," the nonmovant, to

avoid summary judgment, must establish the existence of at least one question of fact that is both

"genuine" and "material."  *Id.* at 763 n.1.  The failure of the nonmovant to come forward with

sufficient evidence to generate an issue worthy for trial warrants summary judgment for the

--------------------------------------------------------

[7]*See Defendant's Response to Plaintiff's Motion for Leave to File Supplemental
Statement of Undisputed Material Facts*, Docket No. 31, *Further Affidavit of Gary C. Crossen*, p.
1, ¶ 2.

moving party. *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 31 (1st Cir. 2001) (quoting *Ralar Distribs., Inc. v. Rubbermaid, Inc.*, 4 F.3d 62, 67 (1st Cir. 1993)). The evidence of the nonmovant cannot be merely colorable or conclusory but rather must be supported and significantly probative. *Rivera-Cotto v. Rivera*, 38 F.3d 611, 613 (1st Cir. 1994).

### 2. **Issue Preclusion (Collateral Estoppel)**

In their pleadings, the parties assume that the law of Massachusetts applies with respect to the issue of claim preclusion. Because the United States District Court for the District of Massachusetts entered the default judgment, however, the elements of federal collateral estoppel are applicable. *See Fleet National Bank v. Gray et al. (In re Bankvest Capital Corp.)*, 375 F.3d 51, 70 (1st Cir. 2003) (citing *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 978 (1st Cir. 1995)); *Combs v. Richardson*, 838 F.2d 112 (4th Cir. 1988)); *see also Johnson v. SCA Disposal Servs. of New England, Inc.*, 931 F.2d 970, 974 (1st Cir. 1991) (in diversity cases, federal law governs the preclusive effect of a prior federal judgment).

Under the federal standard of issue preclusion, a party must establish four essential elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. *Bankvest*, 375 F.3d at 70; *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994). The principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991).

In this proceeding, the undisputed material facts demonstrate that all but one element has been satisfied. First, in the District Court Matter, ISG alleged, *inter alia,* fraud and intentional

misrepresentation, the exact same issues alleged in the Complaint. Second, as the judgment

entered against Pomeroy in the District Court Matter was not appealed, it stands as a valid and

binding final judgment. Third, the elements of fraud and intentional misrepresentation, required

elements under 11 U.S.C. § 523(a)(2)(A), were essential to the judgment, as demonstrated by

the findings of fact in the District Court Matter. The only question remaining is whether the

proceedings leading to the default judgment in the District Court Matter constitute actual

litigation on the issues of Pomeroy's fraud and intentional misrepresentation.

It is within my discretion to apply collateral estoppel to the default judgment. *Parklane

Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331 (1979). I recognize, however, that default

judgments are generally not given collateral estoppel effect because the court issuing the

judgment was not able to decide the issue in an adversarial context.[8] *Bush,* 62 F.3d at 1323.

Several federal courts, however, have articulated an exception to this general rule.

*Cornwell v. Loesch (In re Cornwell),* 109 Fed.Appx. 682 (5th Cir. 2004);[9] *Herbstein v.*

---

[8]The First Circuit recognized but did not address this issue in *Commonwealth of Mass. v. Hale,* 618 F.2d 143, 146 (1st Cir. 1980) (declining to decide whether collateral estoppel can be applied to a default judgment in a dischargeability matter). In two cases in this district, the courts declined to apply collateral estoppel to state court judgments under state collateral estoppel. *See Staniunas v. Delisle (In re Delisle),* 281 B.R. 457 (Bankr. D. Mass. 2002) and *Phalon v. Varrasso (In re Varrasso),* 194 B.R. 537 (Bankr. D. Mass. 1996). In a matter involving collateral estoppel and a state court judgment issued after an unopposed motion for summary judgment, Judge Laskar explained that in order to determine if a matter was actually litigated a court needs to look at the defendant's good faith excuse. *Polechronis v. Cape Code Needleworks, Inc. (In re Polechronis),* 186 B.R. 1, 4 (D. Mass. 1995). If the defendant's lack of objection was tactical, it would be appropriate to consider the matter actually litigated. *Id.* None of these decisions, however, are on point or binding with respect to the matter before this Court.

[9]This decision is an unpublished decision pursuant to Rule 47.5.4 of the local rules of the Fifth Circuit.

9

*Bruetman,* 32 Fed.Appx. 158 (7th Cir. 2002);[10] *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d

210, 215 (3rd Cir. 1997); *Bush*, 62 F.3d at 1324; *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 367

(9th Cir. 1995); *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 472 (B.A.P. 10th Cir. 1999)

*aff'd* 216 F.3d 1087 (10th Cir. 2000).[11]  Those courts have ruled that if a party substantially

participates in litigation prior to the entry of a default judgment, a federal court can apply

collateral estoppel and prevent that party from relitigating the issues decided by the judgment.

*See, e.g., Bush,* 62 F.2d at 1323; *Daily,* 47 F.3d at 368; *but see Federal Ins. Co. v. Gilson (In re*

*Gilson)*, 250 B.R. 226, 233- 235 (Bankr. E.D. Va. 2000) (rejecting exception set forth in *Bush*

and *Daily* after concluding standard too unclear).

      Given that a majority of courts of appeal have found an exception to the general rule that

collateral estoppel does not apply to a default judgment, I will adopt such an exception.

Accordingly, if I find that Pomeroy substantially participated in the District Court Matter, I will

apply collateral estoppel with respect to the that judgment in this adversary proceeding.  Exactly

what constitutes substantial participation, however, is not defined.  Accordingly, a review of the

facts of the foregoing cases is instructive.

      In *Cornwell*, the debtor appealed the decision of the bankruptcy court that applied

---

[10]The Seventh Circuit affirmed in an order that was not published pursuant to its local rules that provide that orders are not to be published.

[11]Recently, the Second Circuit declined to decide whether to adopt this exception. *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, No. 05-6245-BK, 2006 WL 2374238 *1 n.2 (2nd Cir. 2006).  In a nonbankruptcy setting, the Sixth Circuit affirmed the district court ruling that applied collateral estoppel to a default judgment. *Overseas Motors Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499, 516, *aff'd* 519 F.2d 119 (6th Cir. 1975).  The Fourth Circuit has decided this issue but in the context of a dischargeability matter based upon a state court judgment. *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997) (applying Virginia law, used collateral estoppel where default judgment was product of evidentiary damages hearing).

collateral estoppel to a federal district court decision. 109 Fed.Appx. at 683. Prior to reaching

the Fifth Circuit, the United States District Court for the Northern District of Texas, which had

to address the sufficiency of the evidence before the bankruptcy court, explained the nature of

the judgment issued against the debtor by the district court in Kansas as follows:

> In essence, the Kansas Court's judgment amounts to a post-answer default
> judgment against the Appellants, issued as a sanction for their gross failure to
> comply with orders of the court. Perhaps the best evidence for this is the Motion
> for Judgment filed by the Appellees. The Appellees did not move for summary
> judgment under Federal Rule of Civil Procedure 56(c). Rather, in their Motion,
> the Appellees sought entry of "[j]udgment against Defendants Rober W.
> Cornwell [and] Joel Stanley . . . on the grounds that they have flagrantly failed to
> comply with [the] Court's Scheduling Order of October 30, 2001." Record at
> 152. It is undisputed that the record . . . fully details the 'discovery abuses and
> dilatory tactics' of the Appellants, as well as the sanctionary nature of its
> judgment.

*Cornwell v. Loesch,* No. Civ.A. 3:03-CV-2826P, 2004 WL 614848, *5 (N.D. Tex. 2004).

The court went on to explain that the debtors had failed to comply with court orders and

discovery deadlines and failed to file required disclosures despite having been warned to do so.

*Id.* The debtors avoided contempt based upon agreements to comply with discovery but failed

to so proceed. *Id.*

On appeal, the Fifth Circuit recognized that it has repeatedly applied collateral estoppel

to a default judgment which a state court issued. 109 Fed.Appx. at 684.[12] The court then went

on to conclude:

> If there was evidence for the bankruptcy court to conclude that the Kansas
> judgment was a post-answer default entered as a sanction for discovery
> violations, it could conclude that the issue was 'actually litigated' and issue

---

[12]One such case to which it and many other cases cite regarding the application of
collateral estoppel to a default judgment is *Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195
(5th Cir. 1996). In that case, the Fifth Circuit decided the matter by looking to the law of Texas.

preclusion applied. As shown by the above-quoted Kansas district court judgment, the bankruptcy court did not err in concluding that the issue was a sanction which made it 'actually litigated' for estoppel purposes. For the reasons stated by the district court, Cornwell and Stanley's contention . . . is without merit. . . . Moreover, that the Kansas judgment was a default judgment was apparently conceded in bankruptcy court by Cornwell and Stanley.

*Id.* at 684-5.

In *Bruetman*, the Seventh Circuit entered an order affirming the lower courts' application of collateral estoppel to a federal default judgment. 32 Fed.Appx. 158, *1. The district court decision *Herbstein v. Bruetman*, 266 B.R. 676 (N.D. Ill. 2001), and the bankruptcy court decision *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 649 (Bankr. N.D. Ill. 2001), provide the facts of the default. The parties had a long history of litigating the issue of a failed investment relationship. When the matter reached the United States District Court for the Southern District of New York, the parties engaged in extensive discovery, hired expert witnesses and participated in a pre-trial. 259 B.R. at 658. When the matter was close to trial, however, the court ordered Bruetman to make certain disclosures. Bruetman failed to comply despite warnings of default and his attorney wrote to the court acknowledging that possibility. The district court judge entered a default judgment for Bruetman's failure to comply with court orders. *Id.*

The bankruptcy court, in the subsequent dischargeability matter, determined that the answer, significant discovery and motions were sufficient participation warranting application of collateral estoppel. 259 B.R. at 664. The district court adopted the exception found in *Daily*, *Bush* and *Docteroff*, 266 B.R. at 684-5, and concluded that the facts substantiated applying collateral estoppel to the bankruptcy court proceeding. *Id.* In a brief decision, the Seventh

12

Circuit agreed. 32 Fed.Appx at 158 *1.

In *Docteroff*, the Third Circuit cited to the district court decision which contained a description of Docteroff's conduct during the matters before that court. *Wolstein v. Bernardin*, 159 F.R.D. 546 (W.D. Wash. 1994). The district court explained that Docteroff evaded a scheduled deposition to the point where the court was required to order Docteroff to attend a deposition and mediation. He did not attend the deposition on the date ordered and when he finally did appear, he lied about his failure to attend the court-ordered deposition. Docteroff was similarly unhelpful with respect to producing documents. The court renewed the hearing on the motion for sanctions and also scheduled its own show cause hearing. The parties sent in their local counsel to defend. The court concluded that the non-compliance was willful and in bad faith. It explained that if the appearance "on the dates ordered by this Court was too great a burden, their sole remedy was to be sought from the Court, not from [opposing counsel]." 159 F.R.D. at 552. The court then issued a sanction of a default judgment after applying a five-part test.

Based upon that decision, the Third Circuit found that Docteroff extensively participated by filing an answer, engaging lawyers, participating to a degree in discovery and corresponding with opposing counsel. *Docteroff*, 133 F.3d at 215. The court found that when he realized he would not prevail, he willfully obstructed discovery. As such, the court concluded the matter was actually litigated and affirmed the lower court application of collateral estoppel in a nondischargeability hearing. *Id*. at 217.

The Eleventh Circuit Court of Appeals also considered whether to uphold the application of collateral estoppel in a nondischargeability proceeding to a default judgment in a lawsuit

based upon allegations of fraud. *Bush*, 62 F.3d at 1322. In *Bush*, the debtor filed an answer and

counterclaim, and participated in discovery. *Bush,* 62 F.3d at 1322. The court found that

Bush's attorney had so much difficulty contacting Bush that the district court allowed him to

withdraw from the case and granted Bush's motion to proceed *pro se. Id.* After that point,

Bush failed to produce exhibits despite repeated requests, and failed to appear for a properly

noticed deposition. *Id.* In response to the motion for sanctions under Fed. R. Civ. P. 37, Bush

claimed he had been out of state. *Id.* Bush then failed to appear for the pre-trial conference

where the court heard oral argument on the motion for sanctions. *Id.* A pretrial order was

entered granting the plaintiff a judgment by default, to which Bush filed no objections. *Id.*

The Eleventh Circuit found that Bush had actively participated in the case for almost a

year. *Id.* at 1324. He hired counsel, answered, counterclaimed and sought discovery. Id. He

then refused to produce documents and appear at depositions. *Id.* Although he responded to the

motion for sanctions, he failed to appear at a pre-trial. *Id.* As a sanction for his shortcomings,

the court entered a default judgment. *Id.* at 1325. In affirming, the Eleventh Circuit concluded

that Bush had a full and fair opportunity to defend and ample warning of the conclusive effect of

his behavior. *Id.* In considering the holding in *Daily*, the court noted:

> Without denying Daily his day in court, application of the doctrine served its
> central purposes of 'protect[ing] [the prevailing party] from the expense and
> vexation attending multiple lawsuits, conserv[ing] judicial resources, and
> foster[ing] reliance on judicial action by minimizing the possibility of
> inconsistent decisions.' By contrast, denying preclusive effect to the [prior]
> judgment on the ground that the issues relevant to discharge were not fully tried
> in that proceeding would permit Daily to delay substantially and perhaps
> ultimately avoid payment of the debt by deliberate abuse of the judicial process.

*Id.*

14

In *Daily*, the Ninth Circuit Court of Appeals considered whether a federal court default judgment precluded relitigation in the bankruptcy proceeding on the issue of the debtor's fraud. *Daily*, 47 F.3d at 368. Daily had filed his bankruptcy case prior to the FDIC's request to join him as a defendant in a civil action in federal district court. *Id.* at 366. In the bankruptcy court, Daily agreed to a stipulation modifying the automatic stay so that the FDIC could proceed against Daily in the district court action. *Id.* at 367. The stipulation contained terms for the effect of a judgment for the FDIC in further proceedings before the bankruptcy court. *Id.*

The matter then returned to the district court and Daily failed to respond to the FDIC's discovery requests for a period of nearly two years. *Id.* Daily's actions during that time period are set forth in *FDIC v. Daily*, 973 F.2d 1525 (10th Cir. 1992). In that decision, the Tenth Circuit explained that Daily had been granted two extensions to respond to discovery. *Id.* at 1528. When the FDIC moved to compel, Daily responded that he would do so. *Id* at 1528-9. The motion was granted and Daily did not respond. *Id.* at 1529. The FDIC then moved for a default judgment under Fed. R. Civ. P. 37 and thereafter Daily responded to the interrogatories by either asserting the Fifth Amendment or claiming insufficient knowledge. He produced no requested documents and did not sufficiently respond to the order to do so. *Id.* The court then granted the default judgment. *Id.* The Tenth Circuit affirmed ruling that the district court did not abuse its discretion when it ruled that default judgment was proper when the other side had been prejudiced by the delay, Daily's tactics had interfered with the important role of discovery, Daily had ignored the order to compel and must be bound by the actions of his counsel.

After the default judgment entered in the district court, the FDIC subsequently moved for summary judgment in the bankruptcy court and the court, relying on the default judgment,

15

granted the motion. 47 F.3d at 367. Daily then argued before the Ninth Circuit that his fraud

had not been actually litigated. *Id.* at 368. The court concluded that Daily's failure to

participate in discovery for two years and thwart the FDIC's trial preparation demonstrated that

although he had a full and fair opportunity to defend, Daily precluded resolution through the

adjudicative process. *Id.*[13]

In the case before the Bankruptcy Appellate Panel for the Tenth Circuit, the court had to

consider a default judgment entered against a debtor in a federal district court. *McCart v.*

*Jordana (In re Jordana)*, 232 B.R. 469 (B.A.P. 10th Cir.), *aff'd*, 216 F 3d 1087 (10th Cir. 2000).

In that case, the debtor refused to obtain new counsel after his counsel withdrew even after the

court advised him otherwise. He explained that God was his counsel. He did not answer the

complaint despite admonishments from the court. He did not respond to discovery and

absconded with the original copy of his deposition and refused to return it. *Jordana*, 232 B.R. at

471-2. The debtor wrote to the court in defense of the request for default judgment, the plaintiff

responded and the court entered the default judgment. The debtor then filed for relief and the

bankruptcy court applied collateral estoppel in the subsequent adversary proceeding.

The appellate panel described the debtor's actions as misconduct, misbehavior and

obfuscation. It found that the debtor had had a full and fair opportunity to litigate the issues.

The debtor in the case did not simply choose not to defend but participated for two years.

The foregoing authority cautions that a court may exercise its discretion to not apply

---

[13]Conversely, the Ninth Circuit held in *I.R.S. v. Palmer (In re Palmer)*, 207 F.3d 566 (9th
Cir. 2002) that collateral estoppel could not apply because the debtor did not substantially
participate. In that case, the debtor filed an action against the IRS but then ceased to prosecute
the same. The court would not apply collateral estoppel as the debtor abandoned the litigation at
too incipient a stage.

collateral estoppel if the court finds that there were mitigating circumstances which precluded a party from continuing to participate in a proceeding. *Bush,* 62 F.3d 1319 (11th Cir. 1995). In *Bush,* the court explained that a court may declined to apply collateral estoppel if "the amount of money at stake or the inconvenience of the forum might disincline a defendant to offer a defense." *Id.* at 1325 n. 8. It also ruled that if a default were "ordinary," estoppel may not be appropriate. *Id.* In *Bush,* however, the Eleventh Circuit found that "the amount of money was substantial, the forum was convenient and Bush did, in fact, participate in the litigation long after the issue was joined." *Id.*

If a defendant does not contest a lawsuit, these courts suggest that collateral estoppel should not be applied. *Gober,* 100 F.3d at 1205; *Bush,* 62 F.3d 1325 n. 8; *Gilson,* 250 B.R. at 235; *Gottheiner,* 703 F.2d at 1140 ("a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight. The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect."). Likewise, a party seeking to conserve his own and judicial resources by choosing to contest a proceeding in a different forum such as the bankruptcy court can be relevant. *See Marlee Elec. Corp. v. Antonakis (In re Antonakis),* 207 B.R. 201, 206 (Bankr. E.D. Calf. 1997) (declining to apply collateral estoppel where debtor ran out of funds prior to filing an answer).

Before turning to the case before me, it is instructive to consider the reason for and ability of a court to enter a default judgment as a sanction for abuse of the discovery process. Judge Selya has explained that a default judgment is a sanction which should be imposed when a litigant's misconduct is extreme. *Young v. Gordon,* 330 F.3d 76, 81 (1st Cir. 2003). He continues, "[w]e have recognized, however, that disobedience of court orders is inimical to the

17

Case 06-01064    Doc 38    Filed 11/08/06    Entered 11/08/06 16:23:39    Desc Main
Document      Page 18 of 21

orderly administration of justice and, in and of itself, can constitute extreme misconduct." *Id.*

In *Young,* Judge Selya considered the plaintiff's preferred excuses for failure to abide by court

orders regarding discovery and rejected each one. *Id.* at 81-2. Judge Selya explained that a

sanction of dismissal does not require a finding of bad faith and "the mere fact that a litigant or

lawyer may have had other priorities does not constitute a bulletproof excuse for noncompliance

with a court order." *Id.* at 82.

The unopposed facts in this case establish that in the District Court Matter, Pomeroy

hired counsel and filed an answer and affirmative defenses. Pomeroy initially responded to

discovery. Pomeroy objected to a preliminary injunction and then assented to a stipulation

regarding the equitable relief. Pomeroy then failed to comply with discovery and violated the

terms of the preliminary injunction. ISG moved for an accounting which had previously been

ordered under the terms of the preliminary injunction and the court entered an order granting

that motion. Pomeroy again did not comply. ISG moved for sanctions based upon the failure to

comply with discovery and the failure to comply with the terms of the injunction. The district

court scheduled a hearing on that motion and ordered Pomeroy to appear and show cause why

he should not be held in contempt. Pomeroy's counsel appeared at that hearing. The district

court granted the sanctions and held Pomeroy in contempt of court.[14] The court requested that

ISG file a request for default. ISG filed the request and the court entered the same. The court

held a hearing on the default judgment and ordered further information. Judge Zobel then

---

[14]The First Circuit has explained that civil contempt "may be imposed to compel
compliance with a court order or to compensate a party harmed by non-compliance. *U.S. v.
Saccoccia,* 433 F.3d 19 (1st Cir. 2005). It can only be established if the violation of the order is
'clear and unambiguous.'" *AccuSoft Corp. v. Palo,* 237 F.3d 31 (1st Cir. 2001).

entered a default judgment as a sanction for Pomeroy's lack of participation. In so doing, she specified the grounds for the amount of the judgment and made findings with respect to the violations of Mass. Gen. Laws ch. 93A. Pomeroy never dismissed his counsel and the affidavits that the parties submitted demonstrate that Pomeroy was making payments to his former counsel's firm during the course of the District Court Matter. At no point during these 18 months did Pomeroy indicate to ISG or Judge Zobel the reasons why he choose not to participate in the litigation.

Certainly, the circuit court decisions above describe actions that run along a continuum from the incipient stage in *Palmer* to the unquestionably significant involvement described in *Breutman*. I disagree with the court in *Gilson*, however, that picking a point along that line to determine substantial participation is too arbitrary. *Federal Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226 (Bankr. E.D. Va. 2000). Pomeroy exceeded the incipient stage and while he is not at the *Breutman* or *Docteroff* stage, the facts in this case are comparable to those set forth in *Cornwall*, *Bush* and *Daily*.

Pomeroy offers as a mitigating factor the fact that he ran out of funds to defend himself.[15] In support of this defense, Pomeroy provided the first affidavit of his former counsel in which his counsel explained that Pomeroy instructed him to only respond to that requested of the district court and then instructed him to not defend the matter. The assertions, however, do not comport with the docket in the District Court Matter. During the summer of 2002, Pomeroy's counsel did more than simply respond to the district court, he opposed the

---

[15] In his response to the motion for summary judgment, Debtor's counsel asserts that the Debtor ceased defending the District Court Matter because he anticipated litigating the matter in the bankruptcy court. This assertion is not established in the affidavits or by any other evidence.

preliminary injunction and then agreed to the entry of a stipulation and order. He conferred with

opposing counsel regarding discovery. After his counsel contends that he was to terminate

defending the matter, he appeared in the district court for the show cause hearings.

Pomeroy also directed the Court to the partial account of his payments to his counsel and

his counsel's second affidavit. That account reflects that during the District Court Matter,

Pomeroy was paying his counsel. Pomeroy's former counsel alluded to the fact that those

payments were being applied to litigation which was ongoing and that those payments were

from friends and family.

Even if I were to decide that such meager evidence supports this assertion, that evidence

does not support his allegation. The other litigation before Judge Zobel was voluntarily

dismissed not long after the commencement of the District Court Matter. The criminal matter

was not commenced until the District Court Matter was largely concluded. While Pomeroy's

counsel referred to other matters pending, he failed to described or detail the matters to which he

alluded. During the duration of the District Court Matter, Pomeroy was paying his counsel and

his counsel appeared before the district court. At no time did Pomeroy seek to dismiss his

counsel or did his counsel seek permission to withdraw due to lack of payment. At no time did

he appear *pro se* or by counsel to explain his contempt of court. At best, he simply chose not to

apply his payments to defend this litigation. As Judge Selya explained, this is not a bullet proof

excuse and indeed given the paucity of evidence regarding this defense and the unopposed facts

to the contrary, I conclude that this defense lacks merit.

## IV. Conclusion

Based upon the foregoing cases and the facts in this case, I conclude that Pomeroy substantially participated in the District Court Matter. I further conclude that Pomeroy did not offer supportive substantive facts which would mitigate this conclusion. As such, collateral estoppel applies to findings in the District Court Matter. As those findings are identical to what this Court must find for a judgment under 11 U.S.C. § 523(a)(2)(A), summary judgment is appropriate. Having so concluded, I need not address the issue of claim preclusion. A separate order will enter.

William C. Hillman
United States Bankruptcy Judge

Dated: November 8, 2006